# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* C.B.

**No. 25-75** (Pocahontas County CC-38-2024-JA-9)

## MEMORANDUM DECISION

Petitioner Father J.B.[1] appeals the Circuit Court of Pocahontas County's December 19, 2024, order terminating his parental rights to C.B.,[2] arguing that the termination was erroneous because it was not necessary for the child's welfare. Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In July 2023, the DHS received a referral alleging that the petitioner had substance abuse issues and discharged a firearm "within earshot" of the child and the mother after an argument between the mother and the petitioner. Upon investigation, the DHS discovered that the parents were in the midst of a family court case over custody of the child and that the mother obtained a protective order against the petitioner because of the firearm incident. The DHS substantiated the allegations, implemented a safety plan, and referred the family for preservation services, which included random drug screening and individualized parenting education sessions. However, the petitioner refused to participate. As a result, in March 2024, the DHS filed a petition alleging that the petitioner abused and neglected the child by demonstrating poor impulse control and lack of self-control in the child's presence, inflicting mental and emotional injury on the child, and failing to comply with the safety plan, which "demonstrate[ed] an unwillingness to take the actions necessary to reduce the threat to his child so that safety does not have to be controlled by external means."

In May 2024, the circuit court held an adjudicatory hearing for which the petitioner did not appear. The petitioner's counsel moved to continue the hearing explaining that the petitioner's absence was the result of "vehicle damage that occurred while he was traveling to the hearing." The court continued the hearing and ordered the petitioner to submit for a drug screen by the end of the day. Additionally, the court ordered the DHS to provide supervised visitation services to the

---

[1] The petitioner appears by counsel John C. Anderson II. The West Virginia Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Andrew T. Waight. Counsel Joshua P. Hardy appears as the child's guardian ad litem.

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

1

petitioner. In June 2024, the DHS filed an amended petition alleging that the petitioner failed to comply with the court's order to drug screen and that he had failed to provide financial support for the child because he had been in arrears on child support since January 2024. The court held a second adjudicatory hearing in July 2024, which was continued due to a recent substitution of counsel for the mother. At this hearing, the court ordered the petitioner to submit to a drug screen, and he tested positive for methamphetamine.

On August 6, 2024, the DHS filed a second amended petition adding allegations of the petitioner's positive drug screen and alleging that the petitioner failed to comply with the multidisciplinary team's ("MDT") request to submit to another drug screen. On August 7, 2024, the court held a final adjudicatory hearing during which the petitioner stipulated "that the evidence would be sufficient to establish that he engaged in substance abuse to such an extent as to interfere with his ability to parent." Based on the petitioner's stipulation, the court adjudicated the child as a neglected child and the petitioner as an abusing parent. Despite the petitioner's stipulation, the record shows that he maintained that he did not abuse drugs and asserted that his positive screen and failure to appear for screens "could be otherwise explained."

On September 18, 2024, the circuit court held a dispositional hearing.[3] Following the presentation of evidence, the court found the DHS had proven there was no reasonable likelihood that the petitioner could substantially correct the conditions of abuse or neglect in the near future and that termination of the petitioner's *custodial* rights was necessary for the child's welfare. However, the court explained that, "[a]s to the remainder of his parental rights the Court will hold the matter in abeyance until such time as it is provided with the results of a psychological examination of the child containing an opinion about psychological effects of full termination." Accordingly, the court terminated the petitioner's custodial rights to the child and ordered the child to undergo an expedited forensic evaluation.

On December 18, 2024, the circuit court held a final dispositional hearing. The DHS presented expert witness testimony of the psychologist who conducted the child's forensic evaluation. The psychologist testified that the then-six-year-old child expressly indicated he was afraid of the petitioner because the petitioner would leave him alone for hours at a time. On cross-examination, the psychologist acknowledged that, during supervised visits with the petitioner, a service provider noted that the child was excited to see the petitioner and enjoyed playing with him. Nevertheless, the psychologist opined that continued exposure to the petitioner would be detrimental to the child. The psychologist based his opinion on the child's fearfulness; the petitioner's lack of participation in services, acceptance of responsibility, and violent tendencies; and the mother's report that the child experienced anxiety and nightmares as a result of the trauma he endured from the petitioner. The circuit court also heard testimony from the petitioner, who requested the court "to consider giving [him] periods of custody with [the child] that would be supervised by [his] brother and . . . sister-in-law." In support, the petitioner testified that his brother and sister-in-law were willing to supervise visitations with the child, had been married for ten years, had no criminal background, were gainfully employed, and had a good relationship with the child.

---

[3] A transcript of this hearing was not included in the record on appeal.

After considering the evidence and arguments of counsel, the circuit court entered its final dispositional order finding that the petitioner was "presently unwilling or unable to address the child's needs" and was "unwilling to acknowledge the nature or extent of his parenting deficiencies, including those directly related to his substance abuse." The court further found that the child was fearful of the petitioner, that there was "no reasonable prospect of a safe and healthy reunification . . . in the absence of [the petitioner's] acknowledgement of his parenting deficiencies," and that ongoing contact would be detrimental to the child. The court concluded that there was no reasonable likelihood that the petitioner could substantially correct the conditions of abuse or neglect in the near future and that termination of his parental rights was necessary for the child's welfare. As such, the circuit court terminated the petitioner's parental rights to the child.[4] It is from the dispositional order that the petitioner appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court the petitioner argues that the circuit court erred in finding that termination of his parental rights was necessary for the child's welfare. The petitioner relies on the fact that the child enjoyed playing with him and was excited to see him and that he had family members who were willing to supervise visits with the child. Thus, he argues that termination of his custodial rights, "with supervised visits by willing and capable family members" was in C.B.'s best interest. However, we find no merit to the petitioner's argument. As we have explained, "[a] child's 'welfare' . . . concerns his or her personal well-being," which "necessarily implicates his or her need for and entitlement to permanency." *In re A.P.*, 245 W. Va. 248, 257 n.17, 858 S.E.2d 873, 882 n.17 (2021). In that vein, "the 'and when necessary for the welfare' language of West Virginia Code § 49-4-604(c)(6) does not allow a court to make a dispositional election which jeopardizes a child's right to that permanency." *Id.* at 257 n.17, 858 S.E.2d at 882 n.17.

Contrary to the petitioner's arguments, the record supports the circuit court's finding that termination was necessary for the child's welfare. Specifically, the record shows that the petitioner refused to acknowledge, much less address, his parenting deficiencies; that the child was afraid of the petitioner; and that contact with the petitioner would be detrimental to the child. Moreover, the record shows that the circuit court considered "all evidence presented" in reaching its dispositional decision, which necessarily includes the testimony concerning the child's excitement and joy when visiting with the petitioner and the willingness of family members to supervise future visits. Despite this evidence, the court found that reunification was not possible and that termination was necessary for the child's welfare. The circuit court was free to accord appropriate weight to the evidence, and we refuse to disturb such determinations on appeal. *See State v. Guthrie*, 194 W. Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995) ("An appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact."). Furthermore, the circuit court found that there was no reasonable likelihood that the petitioner could correct the conditions of abuse and neglect in the near future—a finding the petitioner does not challenge on appeal. Termination of parental rights is appropriate upon such findings. *See* W. Va. Code § 49-4-604(c)(6) (permitting termination of rights upon finding "that there is no

_____

[4] The permanency plan for C.B. is to remain with his nonabusing mother.

reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and, when necessary for the welfare of the child"). Accordingly, the circuit court did not err in terminating the petitioner's parental rights.

For the foregoing reasons, we affirm the circuit court's December 19, 2024, order.

Affirmed.

**ISSUED:** March 3, 2026

**CONCURRED IN BY:**

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III

4